UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UPPER CHATTAHOOCHEE RIVERKEEPER FUND, INC., THE UNITED STATES OF AMERICA AND THE STATE OF GEORGIA | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) ) ) | CIVIL ACTION FILE NOS. 1:95-CV-2550-TWT and 1:98-CV-1956-TWT, Consolidated |
| v. | ) ) | |
| THE CITY OF ATLANTA, | ) ) | |
| Defendant. | ) | |

_____

**Memorandum for Status Conference**

Defendant City of Atlanta ("City") submits this Memorandum for the Status Conference noticed for May 19, 2010. The memorandum addresses issues understood to be of primary interest to the Court for this Status Conference.

I.  Introduction

The City is committed to compliance with its remaining obligations under the First Amended Consent Decree (FACD). The City's work to date has already

US2008 1298187.1

eliminated, over 95% of the volume of sewer spills from the City's sanitary sewer system. The City's request for an amendment to the FACD in no way lessens this resolves, but rather reflects the reality of the financial market and the City's precarious economic position. To achieve compliance, and to do so without compromising other components of the City's water and wastewater system that are equally important for delivering essential services and protecting public health and the environment, the City intends to work collaboratively with the United States and the State of Georgia (EPA/EPD) to modify the FACD. The goal of these modifications is to complete the work that will most effectively protect the environment per dollar spent prior to the existing July 1, 2014 deadline while balancing the essential needs of all the Consent Decree stakeholders: the Court, EPA/EPD, the financial community and bondholders, the City's rate-payers, and the Atlanta community and downstream communities. For the remainder of the work, the City seeks a fifteen year extension that will shift expensive but less impactful work into an asset management approach that prioritizes the City's financial resources to be spent on repair, rehabilitation, or replacement of sanitary sewers in the worst condition and with the highest risk of failure on a systematic and routine basis in perpetuity. In addition, this fifteen year extension will allow the City to spend needed funds for necessary improvements to the water system and the non-Consent Decree portion of the City's wastewater system.

A. Achievements to date.

The City's commitment to Consent Decree compliance is evidenced by its actions. Since entering the CSO Consent Decree in 1998 and the First Amended Consent Decree in 1999, the City has completed all requirements under the CSO Consent Decree, requiring $759 million in capital expenditures, on time and under budget. Several major projects under the FACD related to sanitary sewer overflows have also been completed, costing an additional $802 million. These projects, combined with major improvements to the City's wastewater system operations, have resulted in dramatic improvements in environmental performance. Using 2004 as a base tracking year, overflow volumes have been reduced by over 95% and wet weather overflows have been reduced to a handful of events annually. The following charts depict the dramatic decrease in sewage spills and spill volumes between 2004 and 2009. It shows a five year history of 95% or more reduction in overflow volumes as a result of the City's clean water programs.[1]

---

[1] Even with a 500-year rain event in 2009, a 91% reduction in overflow volume was achieved. If the overflow volume caused by this catastrophic event is removed from the 2009 year, the reduction in overflow volume is 97%.





\* Without 500-year rain event in September 2009.

The remaining FACD program that is estimated to cost the City an additional $478 million is designed to address the infrastructure issues that create the remaining 3% of sewage spills. Of this remaining 3%, a significant amount of work will continue to be completed prior to 2014, leaving only a small percentage of the remaining sewage spills to be addressed after 2014. Additional achievements are listed in the City's past reports and most recent semi-annual status report.[2]

B. Competing demands

At the same time, the City has competing capital demands for non-Consent Decree projects in both its wastewater and drinking water system. The City must continue to spend money on both parts of the system to repair and replace aging infrastructure. In addition, new legislative and regulatory requirements that require capital spending have recently been and will continue to be established. For example, the Georgia General Assembly recently passed laws requiring water loss programs and interconnectivity requirements. The City will need to address the imbalance between investment in water and wastewater assets that has occurred over the last decade, largely as a consequence of prioritization of Consent Decree projects. The chart below shows that since 2003, the City has placed $1.95 billion

---

[2] See e.g., Status Report of Defendant City of Atlanta at 3-4, 13-16 (April 1, 2010).

in assets into service in its wastewater system, primarily for Consent Decree projects, as compared to $350 million in drinking water infrastructure. It is essential that the City invest in all aspects of its utility infrastructure to deliver effective services while maintaining compliance with federal and state regulations and protecting the environment and public health into the future.



Since 2001, the City has repeatedly made the case to EPA/EPD that the Consent Decrees impose a tremendous burden upon the City and its ratepayers, which would eventually become unsustainable at the pace it is required to keep.[3]

---

[3] The City has conducted several analyses that indicate the Consent Decrees program costs will result in a High Burden using the United States Environmental Protection Agency, Combined Sewer Overflows: Guidance for Financial Capability Assessment and Schedule Development (1997) – hereinafter generally referred to as "the guidance":

The City has also kept the Plaintiffs and the Court informed of its financial and external challenges.[4] Most recently, the City submitted an updated financial capability analysis to EPA/EPD conducted pursuant to EPA guidance in October 2009, during the final months of the Shirley Franklin administration.[5] This assessment again confirmed that the City faces a high financial burden to implement the Consent Decrees as measured by percentage of median household income. In February 2010, the City informed EPA/EPD that the City had insufficient funds to be encumbered for four sewer rehabilitation projects and two capacity relief projects in Sewer Group 3.[6] The schedule completion dates for these projects is July 1, 2011. On April 30, 2010, the City submitted its formal

---

    i.    April 2001    Affordability Analysis in CSO Remedial Plan, pages 4-8 through 4-14.
    ii.    July 2001    Supplemental Financial Impacts and Affordability Analysis.
    iii.    February 2002    Financial Capability Assessment update.
    iv.    June 2004    Financial Capability Assessment update.
    v.    October 2009    Financial Capability Assessment update.

[4] See *e.g.*, City of Atlanta Semi-Annual Status Report (April 1, 2010); Letter from Robert Hunter to EPA/EPD re Section XII. Notification – Financial Update 3 (February 18, 2010); Letter from Robert Hunter, Commissioner to EPA/EPD re Access to Financial Markets (November 25, 2009); Letter from Robert Hunter, Commissioner to EPA/EPD re Section XII. Notification, *In re Tri-State Water Rights Litigation* (July 31, 2009); Letter from Robert Hunter, Commissioner to EPA/EPD re Global Credit Crisis Update 2 (May 14, 2009); City of Atlanta Semi-Annual Status Report (April 14, 2009).

[5] City of Atlanta Semi-Annual Status Report at 5 (November 16, 2009).

[6] City of Atlanta Semi-Annual Status Report at 2-3 (April 1, 2010); Letter from Robert Hunter to EPA/EPD re Section XII. Notification – Financial Update 3 (February 18, 2010).

request for an amendment to the FACD and schedule extension based upon its financial capability. This request came as a result of a combination of acute current and prospective financial challenges and competing demands for limited capital. EPA/EPD are currently considering the request and negotiations over whether and what type of modifications are appropriate are occurring with EPA/EPD and other stakeholders such as the Upper Chattahoochee Riverkeeper. In the next few months, the City hopes to reach a consensus and present the Court with proposed amendments for its review and approval.

The City submits that modifying the FACD for the limited amount of remaining work, as described below, is the only path forward that will allow it to achieve compliance, and to do so without compromising other components of the City's water and wastewater system that are equally important for delivering essential services and protecting public health and the environment.

II. Amendment Request

There are two chief components to the City's extension request. First, four major projects that will achieve the greatest return on investment with regard to spill volume and spill number reductions will be completed by the current final deadline in the FACD – July 1, 2014. The completion of these major projects is significant and the projects will bring the City close to achieving a 99% reduction

in 2004-calculated spill volumes. Second, the City has requested a fifteen year extension to complete certain existing rehabilitation and capacity relief projects (a number of which will continue to be completed by 2014), and those rehabilitation and capacity relief projects that will be identified by the remaining SSES work, which will be completed by December 2012.

    A. Major Project Completion by July 1, 2014.

        1. Completion of Sanitary Sewer Evaluation Survey (SSES).

The City will complete SSES Contracts A & B for Sewer groups 5 and 6 (downtown area) at a cost of $28,564,125 by December 2012, which will complete all remaining SSES required under the FACD. SSES develops a complete inventory and condition assessment of the 1,582 miles of sanitary sewer system. The FACD requires that all SSES be completed by December 2012 and the City proposes retaining this completion date. The SSES data are critical in defining where repairs or upsizing are needed, as well as providing an updated sewer system asset inventory and condition assessment for use in the City's ongoing asset management program. This project is already in progress and, when finished, will result in completion of the SSES for the City's entire sanitary sewer system.

        2. South River Capacity Relief Tunnel and Pump Station

The South River Tunnel is the last major tunnel project that will provide capacity relief for the City's sanitary sewer system. It is a 9,000 foot long, 14 foot

finished diameter sewer tunnel will extend from the South River WRC to Macon Drive near the South River bridge. The project includes two construction shafts, two intake structures, 1200 feet of connecting tunnels and chambers to transfer flows from the existing sewers to the tunnel and odor control facilities at the intake site. A new 45 MGD pumping station located at the South River WRC end of the tunnel will pump the tunnel flow to the WRC headworks. This project will cost the City $120,533,937.

3. Peachtree Creek Basin North Fork Storage and Pump Station

This project consists of a 25-MGD deep submersible pump station to lift stored flow from a 3 MG underground linear storage facility. Wet weather flows, primarily from Dekalb County, will be diverted to the storage facility anticipated to be 200 feet below grade and roughly 300 feet in length. The pump station is approximately 30 to 50 feet in diameter. The storage and pumping system will significantly reduce the capacity demand on the existing Peachtree Trunk and Peachtree Trunk Relief, both of which experience significant surcharge and spill incidents during wet weather events. The proposed location is a 3.25 acre undeveloped site east of Lenox Road at its intersection with Buford Highway. The storage system will receive diverted flows from the Peachtree Creek North Fork Relief sewer. This project will cost the City $32,620,990.

4. Peachtree Creek Basin South Fork Storage and Pumping Station

This project consists of a 15 MGD deep submersible pump station to lift stored flow from a 2 MG underground linear storage facility. Wet weather flows, primarily from Dekalb County, will be diverted to the storage facility anticipated to be 200 feet below grade and roughly 300 feet in length. The pump station is approximately 30 to 50 feet in diameter. The storage and pumping system will significantly reduce the capacity demand on the existing Peachtree Trunk and Peachtree Trunk Relief, both of which experience significant surcharge and spill incidents during wet weather events. The proposed location is in a slightly developed area on the west side of Zonolite Park in Dekalb County, just outside the City limits. The storage system will receive diverted flows from the Peachtree Creek North Fork Relief sewer. This project will cost the City $24,754,859.

In total the City will spend $206,473,911 on these four major projects. These projects will address the greater portion of the remaining 3% of overflow volume and will complete delivery of the vast majority of the environmental benefit for which FACD was entered to achieve.

B. Asset Management – 15 Year Extension

The City proposes a fifteen year extension to complete rehabilitation and capacity relief projects. Based on the City's financial model, which is currently being evaluated by EPA, the City estimates that it will have approximately $95 million per year available for capital improvement projects. Taken together with a

revised capital improvement program to be consistent with the dual obligations of meeting the intent of the FACD and ensuring safe, reliable service delivery of both water and wastewater services, the City proposes to complete all remaining FACD work no later than 2029.

Of the $95 million projected to be available each year after 2014, the City proposes to spend on average per year the following amounts: $10 million on water supply and treatment assets, $40 million on water transmission and distribution, $30 million on wastewater collection; $10 million on wastewater treatment, and $5 million on information technology and support systems.  This balance of expenditures will ensure completion of remaining FACD work by 2029 while allowing the City to effectively manage its water and wastewater utility.

The City has proposed a prioritization framework that requires the City to spend the available capital on high priority projects rendering greatest benefit per dollar of expenditure are scheduled first; lower priority projects are deferred if adequate financial capacity is not available.  This industry-standard prioritization process differs from that which the City has employed since forming the Department of Watershed Management -- prioritizing the Consent Decree projects first, and then applying any remaining capital funds to drinking water or other capital projects.  This has enabled the City's enormous accomplishments under the Consent Decrees but has resulted in less investment in other parts of the City's

system, which also have operational and regulatory compliance requirements. The fifteen year extension will allow the City to complete the lower priority Consent Decree projects while devoting needed resources to non-Consent Decree water and wastewater projects, ensuring an effective and compliant water and wastewater system in the future.

### III. Timing of Request

#### A. Financial Commitments and Challenges

The City has taken extraordinary measures to fund Consent Decree compliance including:

- Since 2003, the City has tripled water and sewer rates. With the rate increases scheduled to go into effect July 1, 2010, the City will have the highest combined drinking water and wastewater rates of any major metropolitan area in the United States.

- In 2004, the City lobbied successfully for a change in state law and then imposed via public referendum a 1% sales tax dedicated to fund water and wastewater infrastructure. The tax was renewed for an additional four year term in 2008 via a second public referendum. The sales tax may be renewed for two additional four-year terms via public referenda in 2012 and 2016.

- The City incurred revenue bond indebtedness in excess of $3.2 billion. Debt service is the largest single draw upon the City's annual water and wastewater revenues.  In FY 2011, annual debt service obligations and GEFA loans payments accounted for 40% of the City's water/wastewater expenditures.[7]

- Wastewater service rates alone, exclusive of sales tax payments, result in typical residential bills that exceed 2% of Median Household Income – an indicator of High Burden under EPA guidance.  No other wastewater utility in the United States has gone to these lengths to fund Consent Decree compliance.

The City has sustained extraordinary financial impacts from ongoing environmental, regulatory, and economic factors:

- Weather patterns have depressed revenues from user fees.  First, revenues were substantially reduced during the 3-year drought accompanied by a state mandated 10% reduction in water use, City-wide conservation efforts, and a state mandated ban outdoor water use.  This was followed by a wet weather cycle, which continued to keep water revenues at a depressed level due to reductions in water consumption.

---

[7] The City's outstanding long-term debt per customer exceeded $18,000 in FY 2008 while median values for utilities rated "A" by Fitch were $1375 as of March 2010.

- The positive revenue impact of rate increases has continued to diminish as each time they are raised.

- The global recession has led to high unemployment and foreclosure rates which has substantially reduced consumer spending. As a consequence, FY 2010 water and sewer fee revenues are projected to be $17 million below projections and sales tax revenues are projected to be $20.5 million below FY 2008 performance. Between FY 2007 to FY 2010, billed water usage is anticipated to have declined 20 to 25 percent.



- Bond rating agencies have praised the City's management and implementation of its capital program but, have voiced major concerns with

(1) the size of the remaining capital program, and (2) the sustainability of future rate increases. The City has a substantial amount of work remaining under its $4 billion Consent Decree capital program and is at the extreme high end of rate levels nationally. Based upon these factors and the impact of the recent economic downturn, the City was forced to modify its capital improvement program for its Series 2009B bond official statement (October 2009).

Ultimately, this means that the City's future capital program must be predominately cash funded for the near future and the City's ability to raise rates is extremely constrained. Limited access to capital coupled with declining revenues and the competing needs of the City's water system that the City can no longer defer compel the City to seek relief.

## IV.   Conclusion

The City has reached the limits of its financial capability to finance the original capital improvements required by the Consent Decrees while maintaining the basic integrity of its water and wastewater system. The City has achieved a great deal for public health and the environment under the oversight of this Court. The City proposes these modifications to the FACD in the spirit of its long-standing commitment to protect public safety, public health, and the environment.

This pleading has been prepared in 14-point Times New Roman font in accordance with Local Rule 5.1(C).

Respectfully submitted this 17th day of May, 2010.

s/ Susan Richardson

| | |
|---|---|
| Richard A. Horder (Ga Bar No. 366750) <br> c/o Kazmarek Geiger & Laseter LLP <br> 3490 Piedmont Road, NE Suite 201 <br> Atlanta, Georgia 30305 <br> Telephone:  (404) 812-0843 <br> RHorder@kglattorneys.com | Susan Richardson (Ga. Bar No. 362562) <br> Kilpatrick Stockton LLP <br> 1100 Peachtree Street, Suite 2800 <br> Atlanta, Georgia 30309-4540 <br> Telephone:  (404) 815-6500 <br> SuRichardson@KilpatrickStockton.com |
| City of Atlanta Law Department <br> 68 Mitchell Street, S.W. <br> Suite 4100 <br> Atlanta, Georgia 30335-0332 <br> Telephone:  (404) 330-6400 | Roger Bhandari (Ga. Bar No. 056340) <br> Marc P. Goncher (Ga. Bar No. 300418) <br> Renee Shepherd (Ga. Bar No. 641701) <br> RBhandari@AtlantaGa.Gov <br> MGoncher@AtlantaGa.Gov <br> RMShepherd@AtlantaGa.Gov |

*Attorneys for Defendant/Third-Party Plaintiff The City of Atlanta*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

Juliet Cohen, Esq.
General Counsel
Upper Chattahoochee Riverkeeper
3 Puritan Mill
916 Joseph Lowery Blvd.
Atlanta, Georgia 30318

John E. Hennelly, Esq.
Senior Asst. Attorney General
State of Georgia
Suite 4038
40 Capital Square, S.W.
Atlanta, Georgia 30334-1300

William A. Weinischke, Esq.
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611

William Bush, Esq.
Associate Regional Counsel
U.S. Environmental Protection Agency
61 Forsyth Street, S.W.
Atlanta, Georgia 30303

Willie Lovett Jr., Esq.
Vincent Devaughn Hyman, Esq.
Office of the Fulton County Attorney
141 Pryor St., S.W., Suite 4038
Atlanta, Georgia 30303

Frank Strickland, Esq.
Anne Ware Lewis, Esq.
Strickland Brockington Lewis LLP
1170 Peachtree St., NE, Suite 2200
Atlanta, Georgia 30309

Steven Martin Fincher, Esq.
Fincher Denmark & Williams LLC
2262 Mt. Zion Road
Jonesboro, GA 30236

Dennis Alan Davenport, Esq.
McNally, Fox, Grant & Davenport, PC
100 Habersham Drive
Fayetteville, GA 30214

Edward D. Tolley, Esq.
Cook, Noell, Tolley & Bates, LLP
P.O. Box 1927
Athens, Georgia 30603

Further, I hereby certify that I have mailed by United States Postal Service the afore-mentioned document to the following non-CM/ECF participants:

William Randy Turner, Esq.
Turner & Ross, LLC
2265 Roswell Road, Suite 100
Marietta, Georgia 30062

This 17th day of May, 2010.

**KILPATRICK STOCKTON LLP**
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

 s/ Susan Richardson
Susan Richardson (Ga. Bar No. 362562)
surichardson@kilpatrickstockton.com

*One of the Attorneys for Defendant/
Third-Party Plaintiff The City of Atlanta*