IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UPPER CHATTAHOOCHEE RIVERKEEPER FUND, INC., et al.,<br><br>    Plaintiffs,<br><br>      v.<br><br>CITY OF ATLANTA,<br><br>    Defendant. | CIVIL ACTION FILE<br>NO. 1:95-CV-02550-TWT |
| THE UNITED STATES OF AMERICA AND THE STATE OF GEORGIA,<br><br>    Plaintiffs,<br><br>      v.<br><br>CITY OF ATLANTA,<br><br>    Defendant. | CIVIL ACTION FILE<br>NO. 1:98-CV-01956-TWT |

**OPINION AND ORDER**

These are consolidated actions under the Clean Water Act brought by the Upper Chattahoochee Riverkeeper Fund, the United States of America, and the State of Georgia against the City of Atlanta regarding the City's wastewater collection and treatment system. They are before the Court on the Defendant City of Atlanta's Petitions for Review of the Plaintiff United States' Written Response and Demand of Stipulated Penalties [Doc. 347 (No. 1:95-CV-2550), Doc. 229 (No. 1:98-CV-1956)]. For the reasons set forth below and stated by the Court at oral argument, the City's Petitions [Doc. 347 (No.

1:95-CV-2550), Doc. 229 (No. 1:98-CV-1956)] are DENIED.

## I.      Background

Pursuant to the parties' agreement, the Court entered a Consent Decree on September 24, 1998, regarding short- and long-term remedial measures to be taken by the City to eliminate the continuing violations of the Clean Water Act by the City's operation of a combined sewer overflow system. In addition to remedial measures, the Consent Decree provided for the Greenway Acquisition Project, whereby the City agreed to acquire and maintain properties along certain designated streams to reduce and prevent erosion and non-point source pollution. (Consent Decree ("CD") § VIII.B.1). The Consent Decree required the City to prepare the Greenway Acquisition Plan ("GAP") to carry out the acquisition and maintenance of the Greenway properties and stated that no more than ten percent of the area of the properties could be developed for public access or use. (*Id.* § VIII.D.2.j.iv). The Consent Decree also provided that hiking trails and other public access facilities should be "designed and constructed with prevention of non-point source pollution as the primary consideration" and that the location and construction of such facilities should be subject to the approval of the Environmental Protection Agency ("EPA") and the Georgia Environmental Protection Division ("EPD"). (*Id.* § VIII.D.2.m,n). Finally, the Consent Decree provided for stipulated penalties to be paid by the City in the event of certain occurrences. (*See generally id.* § XI.I).

The City finalized the GAP under the Consent Decree in March 2001. (*See* Smith Decl., Ex. K, Doc. 347-4, at 3). In 2004, the City acquired an undeveloped piece of land on Hortense Way adjacent to Proctor Creek under the GAP, which it held as a Greenway property for more than a decade. (*Id.*, Ex. II, Doc. 347-5, at 127). The City later received a grant to design and build a path connecting Grove Park to Westside Park and planned to develop the Hortense Way property for the grant project. (*Id.*, Ex. H, Doc. 347-3, at 58). Allegedly unaware of the property's Greenway status due to a computer system failure,[1] the City's contractors began work on the project in January 2021 without the City notifying or seeking approval from EPA or EPD. (*Id.*, Ex. C, Doc. 347-3, at 26–27). The City of Atlanta Department of Watershed Management ("DWM"), which oversees the City's Greenway properties, learned of the project work in February 2021 and began an investigation into the project. The contractors continued working on the project while DWM investigated, and construction ultimately halted in April 2021 when DWM informed EPA and EPD of the work. DWM confirmed that "the clearing work ha[d] been conducted for the construction of the trail, erosion and sediment

---

[1] Although the City claims that a cyberattack caused the property's Greenway designation to be hidden from the City and its contractor, the parties do not dispute that multiple signs on the property designated the parcel as having Greenway status and that the property's deed noted its Greenway status as well. (Smith Decl., Ex. V, Doc. 347-4, at 434–35; Hearing Transcript, Doc. 360, at 70:25–71:11; Smith Decl., Ex. II, Doc. 347-5, at 127).

control BMPs ha[d] been installed and maintained, trees ha[d] been planted and the pedestrian bridge had been installed." (*Id.* at 27). DWM then requested retroactive approval for the work already performed on the project and prospective approval to finish the work according to the project's plan.

EPA responded to DWM's letter a year later in April 2022, (1) stating that the project did not comply with certain GAP criteria, (2) noting that the completed work could not be retroactively approved, and (3) determining that the bridge should not be removed because "its deconstruction would present a greater impact to the stream than leaving it in place."[2] (*Id.*, Ex. D, Doc. 347-3 at 37–38). EPA assessed a $485,000 penalty under Sections VIII.D.2.n and XI.I of the Consent Decree for the unauthorized disturbance of a Greenway parcel. The City initiated the formal dispute resolution process under the Consent Decree on May 26, 2023, (*Id.*, Ex. A, Doc. 347-3, at 12), and EPA provided its written position on the dispute on August 16, 2023. (*Id.*, Ex. N, Doc. 347-4, at 370). DWM and EPA ultimately reached an agreement to carry out the remaining work (mainly the access trail) on the project in compliance with the GAP. (*Id.*, Ex. JJ, Doc. Doc. 347-5 at 142). But EPA maintains its entitlement to the stipulated penalty, and the City disputes the validity of the penalty in

---

[2] The City contends that EPD separately informed the City that it believed the Consent Decree permitted retroactive approval of the project with certain modifications and that it believed a penalty was inappropriate. (Br. in Supp. of City's Petition, at 2). But EPD states that it takes no position in the present dispute. (Smith Decl., Ex. QQ, Doc. 347-6, at 19).

its Petition.

## II.      Legal Standard

The Eleventh Circuit uses the same rules to interpret consent decrees as it does to interpret contracts. *Reynolds v. Roberts*, 202 F.3d 1303, 1312–13 (11th Cir. 2000). "Long standing precedent evinces a strong public policy against judicial rewriting of consent decrees. A district court may not impose obligations on a party that are not unambiguously mandated by the decree itself." *Id.* at 1312 (alteration, quotation marks, and citation omitted). "What a contract provision means, or whether it is ambiguous, are questions of law" for the Court to interpret. *Id.* at 1313.

## III.      Discussion

In its Petition, the City argues that the Consent Decree does not allow for the stipulated penalty because the City's project complies with the GAP and because the Consent Decree permits retroactive approval. (Br. in Supp. of City's Petition, at 14–21). The City also faults EPA for unreasonably withholding approval for the project and asserts that the assessed penalty is unenforceable as disproportionate in the absence of any environmental harm. (*Id.* at 21–24). The United States maintains that the City's violation of the Consent Decree warrants the assessment of the stipulated penalty. Specifically, it contends that the City violated the Consent Decree by designing and constructing the project without EPA/EPD approval, without non-point

source pollution prevention as a primary consideration, and without adherence to the GAP. (Resp. Br. in Opp'n to the City's Petition, at 8–14). The United States also contends that the Consent Decree does not permit retroactive approval of the City's violations and that EPA's decision to demand a penalty was reasonable. (*Id.* at 15–19).

The parties extensively brief the issues of non-point source pollution and compliance with the GAP, but the Court bases its ruling on much narrower grounds. The Consent Decree states that the "[l]ocation and construction of [hiking trails and public access] facilities *shall be subject to the approval of EPA/EPD.*" (CD § VIII.D.2.n (emphasis added)). The parties do not dispute that the City commenced construction on the project without EPA/EPD approval and continued construction for approximately three months. Under such circumstances, the City clearly violated the terms of the Consent Decree.

The City frames the issue as the Consent Decree allowing for retroactive approval of the development project. (Br. in Supp. of City's Petition, at 19–21). But temporality aside, EPA makes clear that the City did not have its approval to proceed with the project as the City did and would not have had its approval even if the City had sought it. (Resp. Br. in Opp'n to the City's Petition, at 15; *see also* Hearing Transcript, Doc. 360, at 39:5–40:6). Moreover, the Court is unpersuaded by the City's attempt to cast approval for bridge and trail construction as distinguishable from approval for larger commercial

6

construction. (Hearing Transcript, at 25:5–19). That EPA declined to order removal of the bridge despite its non-compliance with the GAP's 50-foot setback requirement evidences the permanency of the City's decision to proceed with construction without EPA approval. (Resp. Br. in Opp'n to the City's Petition, at 16–17 (citing Smith Decl., Ex. D, Doc. 347-3 at 37)). This is precisely the type of project that required *advance* approval.

The City also suggests that the Consent Decree did not divest the City of its land use and planning rights. (Br. in Supp. of City's Petition, at 21). But the Court agrees that the City relinquished some of its land use planning rights when it executed the Consent Decree, thereby also lowering its civil liability in the underlying lawsuit under the Clean Water Act. (Resp. Br. in Opp'n to the City's Petition, at 17–19). Therefore, EPA did not unreasonably withhold its approval of the project as the City contends.[3,4]

---

[3] The Court concludes that the 2010 letter from EPA/EPD to the City regarding amended standards for constructing hard-surfaced trails, among other changes, does not affect the alleged violation of the Consent Decree in this dispute. (Br. in Supp. of City's Petition, at 22; Resp. Br. in Opp'n to the City's Petition, at 17, 22–23).

[4] The City references Section XIX of the Consent Decree throughout its brief in support of its argument that EPA acted too slowly in conducting its review of the project and that EPA/EPD failed to provide notice of EPA's responsibility to review the project. (Br. in Supp. of City's Petition, at 10, 18, 24–25). But the City fails to legally explain how such alleged actions excuse or otherwise affect its failure to provide notice of the development of the Hortense Way property to EPA and are therefore irrelevant.

Having found that the City violated the Consent Decree, the question becomes whether such a violation warrants the assessment of the stipulated penalty. The City does not contest EPA's penalty calculation but does object to the substantive reasonableness of the penalty, arguing that the penalty bears no relation to the degree of harm caused by its failure to seek approval for the project. (Br. in Supp. of City's Petition, at 23–24 (citing *United States v. Witco Corp.*, 76 F. Supp. 2d 519, 530 (D. Del. 1999))). *Witco* is distinguishable from the present case, however, because the disputed penalty there involved EPA's oversight costs of a remediation project that continued to accrue while the Court considered the case, whereas here the assessed penalty runs for only the 94-day period before construction on the project stopped. *Witco Corp.*, 76 F. Supp. 2d at 529–31. Because the Consent Decree settles violations of a statute that provide for penalties, "it would not be unconscionable or otherwise inappropriate to have a provision that imposes a penalty." *United States v. Krilich*, 948 F. Supp. 719, 726 (N.D. Ill. 1996). In this case, the size of the penalty is directly driven by the number of days that the City took to stop work on the project until it could request EPA approval.

Finally, the Court finds that interest on the stipulated penalty should accrue under the terms of the Consent Decree as of the original due date, May 11, 2002. Even if EPD unofficially informed the City that it believed the penalty assessment was inappropriate, the Consent Decree provides for a stay

8

of the City's obligation to pay the penalty only if EPA and EPD provided inconsistent written positions on the issues in the dispute. (CD § XIII.F,G).[5] And EPD takes no position in the present dispute. (Smith Decl., Ex. QQ, Doc. 347-6, at 19). Thus, an award of interest on the penalty is appropriate.

The Court is not unsympathetic to the City's efforts to develop the Greenway property at Hortense Way to connect Westside and Grove Parks. But for 25 years in a variety of disputes, the Court has said that the Consent Decree *must* be complied with notwithstanding political pressures or political considerations affecting the City. This dispute turns on the interpretation of a contractual agreement, not on the wisdom of a public access facility development project. And it is undisputed that the City failed to seek EPA/EPD approval for the development project prior to beginning construction on the property. Accordingly, the $485,000 stipulated penalty is valid and enforceable under the Consent Decree with interest accruing at the statutory judgment rate set forth in 28 U.S.C. § 1961(a) as of May 11, 2022. (CD § XI.O).

---

[5] The City notes that Subsection G does not specify that the inconsistent positions must be written. (Reply Br. in Supp. of City's Petition, at 10 (citing CD § XIII.G)). But reading Subsections F and G together, the Court concludes that the "inconsistent positions" referenced in Subsection G refer to the written positions contemplated by Subsection F. *See Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1367–68 (11th Cir. 2018) ("But our duty is to interpret the contract as a whole, not each term in a vacuum." (citing Restatement (Second) of Contracts § 202(b) (1981))).

## IV.       Conclusion

For the foregoing reasons, the Defendant City of Atlanta's Petitions for Review of the Plaintiff United States' Written Response and Demand of Stipulated Penalties [Doc. 347 (No. 1:95-CV-2550), Doc. 229 (No. 1:98-CV-1956)] are DENIED. The City of Atlanta is hereby ORDERED to pay the sum of $485,000 in stipulated penalties plus interest accruing at the statutory judgment rate as of May 11, 2022, to the United States of America.

SO ORDERED, this ___28th___ day of March, 2024.

THOMAS W. THRASH, JR.
United States District Judge

10